IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

MICHAEL W. MUCK                                                    PLAINTIFF

V.                          Case No. 4:23-CV-00604-BSM-BBM

MARTIN O'MALLEY, Commissioner,
Social Security Administration[1]                                  DEFENDANT

## RECOMMENDED DISPOSITION

This Recommended Disposition ("Recommendation") has been sent to United States District Judge Brian S. Miller. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not file objections, Judge Miller may adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

## I.      INTRODUCTION

On January 28, 2021, Plaintiff Michael W. Muck ("Mr. Muck") filed a Title XVI application for supplemental security income. (Tr. at 14). In the application, he alleged disability beginning on February 2, 2016. *Id*. The application was denied initially and on reconsideration. *Id*.

---

[1] On December 20, 2023, Martin J. O'Malley was sworn in as Commissioner of the Social Security Administration ("the Commissioner"). Pursuant to Federal Rule of Civil Procedure 25(d), Commissioner O'Malley is automatically substituted as the Defendant.

After conducting a hearing, an Administrative Law Judge ("ALJ") denied Mr. Muck's application by written decision, dated September 26, 2022. (Tr. at 14–29). The Appeals Council denied Mr. Muck's request for review on April 27, 2023. (Tr. at 1–6). The ALJ's decision now stands as the final decision of the Commissioner, and Mr. Muck has requested judicial review. For the reasons stated below, this Court should reverse the ALJ's decision denying benefits and remand the case for further administrative review.

## II.    THE COMMISSIONER'S DECISION

Mr. Muck was 21-years-old on the alleged onset of disability and has a high school education. (Tr. at 23–24, 63). The ALJ found that Mr. Muck has not engaged in substantial gainful activity since the alleged onset date of February 2, 2016.[2]  (Tr. at 17). At Step Two, the ALJ determined that Mr. Muck has the following severe impairments: schizophrenia, depression, anxiety, alcohol use, and marijuana use.[3]  *Id*.

At Step Three, the ALJ determined that, even with Mr. Muck's substance use, Mr.

---

[2] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)–(g).

[3] Where drug or alcohol use is involved, a two-part analysis is employed: first considering disability in the presence of the substance use, and then considering disability if the use is stopped. *See* 20 C.F.R. §§ 404.1535(b), 416.935(b); 42 U.S.C. 423(d)(2)(C).

Muck's impairments did not meet or equal a Listing.[4] (Tr. at 17–19); *see* 20 C.F.R. Part 404, Subpt. P, Appendix 1 (20 C.F.R. §§ 404.920(d), 416.925, and 416.926). The ALJ next determined that, in the presence of substance use, Mr. Muck had the residual functional capacity ("RFC") to perform work at all exertional levels, with restrictions: (1) can understand, remember, and carry out simple, routine, and repetitive tasks; (2) can respond to usual work situations and routine work changes; (3) can have occasional social interaction with the general public; (4) cannot climb ladders, ropes, or scaffolds; (5) cannot work in close proximity to unprotected heights; and (6) will be off task 20% of the time. (Tr. at 19).

At Step Four, the ALJ found that Mr. Muck has no past relevant work. (Tr. at 23). Relying upon the testimony of a Vocational Expert, the ALJ found, based on Mr. Muck's age, education, work experience, and RFC, including the substance use, there were no jobs in the national economy that Mr. Muck could perform, and a finding of "disabled" would be appropriate. (Tr. at 24).

The ALJ then moved to the second part of her analysis. If substance use were stopped, the severe impairments of schizophrenia, depression, and anxiety would remain. (Tr. at 24–25). If Mr. Muck stopped substance use, Mr. Muck's impairments would not meet or medically equal a Listing. (Tr. at 25). The ALJ next determined that, if Mr. Muck

---

[4] The Listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just "substantial gainful activity." *Sullivan v. Zebley,* 493 U.S. 521, 532 (1990) (internal citations omitted). That is, if an adult is not actually working and his impairment matches or is equivalent to a listed impairment, he is presumed unable to work and is awarded benefits without a determination whether he actually can perform his own prior work or other work. *Id*.

stopped using substances, he would have the RFC to perform work at all exertional levels with the following restrictions: (1) can understand, remember, and carry out simple routine and repetitive tasks; (2) can respond to usual work situations and routine work changes; and (3) can have occasional social interaction with the general public. *Id*. The ALJ next determined that Mr. Muck could perform past relevant work, but this appears to be a scrivener's error based on the record and the ALJ's prior findings that Mr. Muck had no past relevant work. *Compare* (Tr. 28) *with* (Tr. at 23). At Step Five, the ALJ found that, if Mr. Muck stopped using substances, considering his age, education, work experience, and RFC, there are jobs in the national economy that Mr. Muck could perform. *Id*. The ALJ concluded that substance use was a contributing material factor to the determination of disability because Mr. Muck would not be disabled if he stopped the substance use.[5] (Tr. at 29). Therefore, the ALJ found that Mr. Muck was not disabled from the alleged onset date through the date of the decision. *Id.*

## III.  DISCUSSION

### A.  Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is "supported by substantial evidence on the record as a whole and whether it is based on legal error." *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept

---

[5] *See* 20 C.F.R. §§ 404.1535(b), 416.935(b); 42 U.S.C. 423(d)(2)(C).

as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> [O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision, we also take into account whatever in the record fairly detracts from that decision. Reversal is not warranted, however, merely because substantial evidence would have supported an opposite decision.

*Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001) (internal quotations and citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

## B.      Mr. Muck's Arguments on Appeal

Mr. Muck contends that the evidence supporting the ALJ's decision is less than substantial. Specifically, Mr. Muck argues that the ALJ did not properly consider substance use,[6] that he met a Listing, that the ALJ failed to properly consider Mr. Muck's subjective

---

[6] In response to Mr. Muck's substance abuse argument, Defendants assert that substantial evidence supports the ALJ's conclusion regarding Mr. Muck's improvement in functional abilities when not abusing substances. (Doc. 11 at 10).

complaints, and that the RFC did not incorporate all of his limitations. The Court directs its attention to the first point, as it is outcome determinative.

### C.    Mr. Muck's Diagnoses and Substance Abuse

Mr. Muck, who was born in 1995, was diagnosed with bipolar disorder and schizophrenia in 2016 and spent two weeks in a psychiatric hospital. (Tr. at 383–384, 445–448). Mr. Muck's mental impairments cause symptoms of auditory hallucinations, anxiety, and paranoia, among other things. (Tr. 20–21). In addition to his psychiatric diagnoses, Mr. Muck admitted to heavy alcohol and drug use. (Tr. at 21, 27, 49–52, 383, 922, 975). In fact, in July 2016, he was arrested for public intoxication. (Tr. at 922). Mr. Muck admitted that drug and alcohol use exacerbates his psychiatric symptoms and that staying compliant with medication minimizes symptoms. (Tr. at 633–676). Specifically, when using drugs and alcohol, Mr. Muck experienced hallucinations, had anxiety, had trouble keeping a normal schedule, had mood swings, had difficulty with relationships, had trouble keeping a job, and spent excessive amounts of money. *Id*. Mr. Muck saw a mental health counselor for years, (Tr. at 530–979), who advised that he should stop substance abuse, but Mr. Muck often minimized his substance abuse to his family and doctors, and he continued using. *Id.* In fact, when the ALJ asked Mr. Muck at the hearing when he had stopped abusing substances, he prevaricated. (Tr. at 51–54). The record shows that, even at the time of the July 2022 hearing, Mr. Muck had not been sober for any meaningful amount of time. (Tr. at 535).

While Mr. Muck worked a little for his father-in-law, he never held a full-time job. (Tr. at 23). When he stopped using substances, he felt hopeful about working full-time and

attending college. (Tr. at 21–22, 27, 584, 633, 650, 908). But when Mr. Muck was drinking and using drugs, his psychiatric symptoms left him with little hope of being able to work.

### D.      Drug Addiction and Alcoholism Analysis

When alcohol or drug use is a factor in a disability claim, an ALJ must conduct a Drug Addiction and Alcoholism (DAA) two-step process of: (1) conducting a preliminary disability determination after considering all symptoms, including the ones that resulted from [DAA]; and then (2) determining whether [DAA] was a contributing factor material to that determination. Pub. L. No. 104–121, 110 Stat. 847 (1996); *see Brueggemann v. Barnhart*, 348 F.3d 689, 692–695 (8th Cir. 2003). In other words, if the claimant stopped using substances, would he be disabled? It is the claimant's burden to prove substance abuse is not a contributing factor to disability. *Estes v. Barnhart*, 275 F.3d 722, 724–725 (8th Cir. 2002). "However, the ALJ retains the responsibility of developing a full and fair record in the non-adversarial administrative proceeding." *Brueggemann*, 348 F.3d at 693. In particular, the ALJ must make findings based on medical evidence, including the opinions of medical or psychiatric experts. Here, the ALJ proceeded with the two-part DAA analysis, but this Court finds that the ALJ's conclusions at the second step were not based on substantial evidence in the record.

"When there are concurrent mental disorders in addition to a claimant's DAA, as here, SSR 13-2p makes clear that the ALJ must be able to separate the effects of the two types of impairments to find DAA material." *Morrison v. Kijakazi*, No. 5:21-CV-05048, 2022 WL 1504883, at *14 (W.D. Ark. Apr. 26, 2022), *report and recommendation adopted sub nom.*, *Morrison v. Comm'r, Soc. Sec. Admin.*, No. 5:21-CV-5048, 2022 WL 1491695

(W.D. Ark. May 11, 2022) (citing *Nelson v. Saul*, 413 F. Supp. 3d 886, 912–13 (E.D. Mo. 2019)). In this case, however, the agency's own medical and psychiatric experts ("DDS")[7] did not find substance abuse to be a severe impairment, and they did not differentiate between debilitating symptoms from mental impairments and debilitating symptoms related to alcohol or drug use. (Tr. at 63–85). The psychiatric DDS experts assigned an RFC for simple work, given Mr. Muck's mental limitations, but did not say if DAA was a factor. (Tr. at 76, 83–84).[8] A consultative psychiatric examiner saw Mr. Muck in September 2021, and she determined that Mr. Muck had the ability to do basic work activities, but she did not give much consideration at all to DAA and did not find it to be a severe impairment. (Tr. at 374–377). Mr. Muck's own psychiatrist, who treated Mr. Muck for years, issued a medical source opinion, finding that Mr. Muck had no useful ability to perform many basic work activities; likewise, the psychiatrist did not explain if DAA impacted a functional assessment. (Tr. at 373). The ALJ found that the psychiatrist's opinion was not persuasive. (Tr. at 23).

To the point, none of these doctors offered any opinion about whether Mr. Muck would be disabled if he stopped the substance abuse, which is required at the second step of the DAA analysis. Certainly, Mr. Muck's counselor suggested that he stop using

---

[7] Social Security Disability applications are initially processed through a network of local Social Security Administration field offices and State agencies (called Disability Determination Services or DDSs).

[8] The ALJ's discussion of the medical experts' opinions was cursory, at best, simply stating that the opinions were generally consistent with treatment notes and Mr. Muck's daily activities. (Tr. at 23, 28). The ALJ made no specific citation or reference to the experts' RFC analysis.

substances, but that does not amount to a medical or psychiatric expert's RFC opinion regarding whether substance abuse is a contributing factor material to Mr. Muck's disability determination. And, it is clear from the record that Mr. Muck did not stop using substances. Essentially, the ALJ conducted a DAA analysis without sufficient supporting opinion evidence. (Tr. at 17–29). In fact, the ALJ acknowledged that, if Mr. Muck stopped substance abuse, schizophrenia, depression, and anxiety would remain, and these conditions would have more than a minimal impact on Mr. Muck's ability to perform basic work activities. (Tr. at 25). Then, later in her opinion, the ALJ found, "when the claimant is not engaging in substance abuse, he retains the residual functional capacity to perform work at all exertional levels." (Tr. at 28). The ALJ based this conclusion on medical records, discussing Mr. Muck's demeanor and presentation during examinations when the claimant did not appear to be abusing substances. (Tr. at 27). The ALJ's opinion was not based on medical opinion evidence specifically determining the extent of Mr. Muck's mental impairments without substance abuse, as required.

A recent case from the Western District of Arkansas deals squarely with this issue. *Oliver v. Kijakazi*, No. CV 22-5206, 2023 WL 6930745 (W.D. Ark. Oct. 3, 2023), *report and recommendation adopted sub nom.*, *Oliver v. Comm'r, Soc. Sec. Admin.*, 2023 WL 6929810 (W.D. Ark. Oct. 19, 2023). In that case, the claimant had similar substance abuse issues, as well as severe mental impairments with destabilizing symptoms. *Id.* at *1. The DAA experts in *Oliver* failed to determine if DAA was a contributing factor to the claimant's alleged disability. *Id*. at *3. The ALJ drew inferences about DAA in his analysis rather than basing it on any DAA medical opinions; therefore, following *Brueggeman* and

*Estes, supra,* the *Oliver* court reversed and remanded the case.[9] *Id.* at *3–*4.

In this case, the record is devoid of any medical opinion from which the ALJ could make a decision about whether Mr. Muck's substance use disorder was material to the determination of Mr. Muck's disability. And, the ALJ did not seek to obtain more thorough medical opinions. Moreover, the ALJ did not identify an established period of sobriety, either at the hearing or in the written decision (the *Oliver* ALJ committed the same error).

In an attempt to establish a period of sobriety, the ALJ questioned Mr. Muck at the August 2022 hearing about when he stopped using drugs or alcohol. (Tr. at 51–53); *Pettit v. Apfel*, 218 F.3d 901, 903 (8th Cir. 2000) ("Determining whether a claimant would still be disabled if he or she stopped drinking is, of course, simpler if the claimant actually has stopped."). Mr. Muck did not answer honestly, however, saying it had been a year before when the record illustrated substance use as recently as June 2022. (Tr. at 51–53, 535). Consequently, the evidence in the record was insufficient for the ALJ to determine a period of sobriety. A period of sobriety would show if the claimant's impairments could still be found to be disabling without substance use. In sum, based on the *Oliver* case's holding, and the Eighth Circuit case law supporting that holding, the Court finds that reversal is warranted.

---

[9] "[T]he ALJ must take on the challenging task of untangling the warp threads of the claimant's substance abuse from the woof threads of the claimant's other impairments to examine the hypothetical cloth that remains." *Oliver*, 2023 WL 6930745 at *3 (citing *Taylor v. Colvin*, No. CIV. 13-2108, 2014 WL 2584826 at *3 (W.D. Ark. June 10, 2014)).

**IV.     CONCLUSION**

For the reasons stated above, the Court finds that the ALJ's decision is not supported by substantial evidence. Should this Recommendation be adopted, the Court suggests that, on remand, the ALJ obtain medical opinions addressing specifically whether Mr. Muck is disabled when he is not abusing substances.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision be REVERSED and the case be REMANDED for further administrative review.

DATED this 15th day of August, 2024.

_____
UNITED STATES MAGISTRATE JUDGE